Order affirmed, with $10 costs and printing disbursements.

PUTNAM, J., concurs.   HERRICK, J., concurs in the result.

---

## SECOND METHODIST EPISCOPAL CHURCH IN GREENWICH v. HUMPHREY.

(Supreme Court, General Term, Third Department.   November 22, 1892.)

1. DEED—DESCRIPTION OF PROPERTY.
    In 1846, plaintiff, a religious corporation, entered into possession of a lot, on a part of which it fitted up a church edifice, under a claim of purchase from D., the owner of the fee of a large tract, which included the lot.  Plaintiff received no deed, but continued in possession till 1888, when it was dispossessed of all its lot except that portion covered by the church edifice by defendant, who claimed title through the grantees of D.'s heir.  D. died in 1849, intestate, leaving an only son, P., surviving, who was born in 1844.  In 1856 plaintiff surveyed and fenced the church lot, which fence was kept up for more than 20 years, and its possession in no way interfered with by P. or his guardian, and the former, in 1868, conveyed the larger tract to defendant's grantor, excepting in the deed "a small lot sold off from the southwest corner of the above-described premises to the Methodist E. Church."  The church lot covered about a half a rood in the southwest corner of the tract.  *Held*, that no part of the church lot passed by the deed.

2. ADVERSE POSSESSION—SURVIVAL OF RIGHT OF ENTRY.
    In an action for the recovery of the possession of the premises in dispute, defendant having referred in her examination to a certain deed from P. for the church lot, the deed was produced by plaintiff, and identified by witness on cross-examination.  It was dated 1882, executed by P., and purported to convey the entire church lot to certain ministers and trustees for plaintiff.  *Held*, where it appeared that plaintiff was the real grantee intended and designated in this deed, that, although P.'s right of entry or action was not barred by plaintiff's adverse possession at the time, it was completely terminated by the execution of the deed, so that it did not survive to him or to any one else in hostility to plaintiff, and made plaintiff's title by adverse possession good, entitling it to recover possession from defendant.

3. SAME—CONSTRUCTIVE POSSESSION.
    Plaintiff's title by prescription having fully matured, it was not affected by the fact that plaintiff made no use of the premises in dispute, and allowed its fence to decay and be removed; plaintiff being deemed in such case, by its title, as in fact in constructive possession, exercising a right over the premises by permitting them to remain vacant.

4. CERTIFICATE OF INCORPORATION—ACKNOWLEDGMENT — OFFICIAL CHARACTER.
    Where the official character of the officer who takes an acknowledgment of a certificate of incorporation appears in the body of the certificate, it need not appear in the subscription thereto.

**5. SAME—WHO MAY TAKE ACKNOWLEDGMENT.**

Act 1813, § 1, as amended by Laws 1844, c. 158, § 1, provides that a certificate of incorporation may be acknowledged before "any officer authorized to take acknowledgments or proofs of conveyances of real estate." *Held*, that a commissioner of deeds could properly take such acknowledgment.

Appeal from judgment on report of referee.

Ejectment by the Second Methodist Episcopal Church in Greenwich. against Sarah Humphrey for the recovery of that portion of a church lot not covered by plaintiff's church edifice. From a judgment entered on the report of a referee, awarding plaintiff possession of the premises in controversy, with $317.46 costs, defendant appeals. Affirmed.

A. D. Wait, Esq., the referee, delivered the following opinion:

"It is alleged in the complaint that the plaintiff is a corporation duly organized under and by the laws of the state of New York, and pursuant to an act of the legislature of said state entitled ' An act to provide for the incorporation of religious societies,' passed April 5, 1813. and the several acts amendatory thereof. By the answer this allegation is denied, and it is further averred therein, upon information and belief, that the plaintiff is not, and never was, duly or legally organized or incorporated under and in pursuance of the laws of the state of New York, or the act to provide for the incorporation of religious societies. It was therefore necessary that the plaintiff should prove upon the trial the existence of the incorporation substantially as alleged. Code, § 1776. This requirement of proof on the part of the plaintiff was, as I conclude, fully complied with; and the evidence given on the subject proved the existence of the corporation as alleged in the complaint. The original certificate of incorporation was, it seems, lost, and could not be produced on the trial. A copy of the record thereof, duly certified by the clerk of the county, was therefore properly admitted in evidence. It appears therefrom that the certificate of incorporation was dated December 2, 1833, at Battenville, in the town of Greenwich, and was duly acknowledged before William McNeil, a commissioner of deeds in and for the county of Washington, on the 13th December, 1834, and recorded in the office of the clerk of that county August 10, 1835. The official character of the officer who took the acknowledgment appears in the body of the certificate, but not in the subscription thereto. That is sufficient. Claflin v. People, 15 Abb. (N. C.) 241; Smith v. Tim, 14 Abb. (N. C.) 452, and laws cited in note. And such certificate of incorporation, so acknowledged before a commissioner of deeds, (authorized to take acknowledgments in proof of conveyances of real estate,) is to be regarded, in this action, to be of the same force and validity as if it had been proved before and of the officers named in the first section of the act of 1813, providing for the incorporation of religious societies. Laws 1844, c. 158.[1] It appears from the evidence that ever since the recording of said certificate the religious society referred to therein has been kept up and continued as a religious society at Battenville, in the town of Greenwich, acting as a corporation, and known as ' The Second Methodist Episcopal Church of Greenwich,' as designated in said certificate. The evidence in the case is ample to prove the legal incorporation of the plaintiff as a religious society. 3 Rev. St. (8th Ed.) p. 1884, § 3; Viele v. Osgood, 8 Barb. 131; M. E. Church v. Picket, 23 Barb. 436. affirmed in court of appeals. 19 N. Y. 482; Paper Co. v. O'Dougherty, 65 N. Y. 570; Trustees, etc., v. Bly, 73 N. Y. 323; Lynch v. Pfeiffer. 110 N. Y. 33, 17 N. E. Rep. 402.

"All the allegations of the complaint are controverted 'by the answer. It is also alleged therein that ever since December 3, 1881, she (the defendant) has been the owner of and in possession of so much of the premises described in the complaint as is claimed therein to have been withheld from the plaintiff. Does the evidence sustain the allegations of the complaint as to the title and right of possession in plaintiff to the premises in dispute, so that the plaintiff is entitled to the judgment demanded for the recovery of the possession therefrom from defendant? Both parties claim under a common source of title,—one Osmer Dixon.

[1] Laws 1844, c. 158, § 1, amending the act of 1813, § 1, provides that a certificate of incorporation may be acknowledged before "any officer authorized to take acknowledgments or proofs of conveyances of real estate."

The evidence shows that in 1845 said Osmer Dixon was the owner in fee and in the possession of a small piece of land (about two roods) in Battenville, Washington county, N. Y., on which there was standing a dwelling house, in which he, Dixon, resided, and continued to reside until his death. That in the southwest corner of this land there was a building, which had been used as a wagon shop prior to 1844 by one Caleb Sherman, from whom Dixon derived title to the land in 1844 or 1845. Soon after Dixon acquired title to the land (in 1845 or 1846) the plaintiff entered into possession of said wagon-shop building, and repaired and fitted it up as a house of worship or church, claiming to own the same as purchaser from said Dixon, together with the land on which the building stood, and a small strip of land contiguous on the northeast side and rear of said building, (about one half rood in all,) and being the premises described in the complaint. The plaintiff claimed to have bought said small tracts of land of said Osmer Dixon, and to have paid him therefor, and to own the same by reason thereof; but it does not appear that said Dixon ever executed a deed of the same to the plaintiff. The plaintiff continued thereafter in the possession and use of said land and building for church purposes, and as the owner thereof, until dispossessed in August, 1888, by defendant, of that portion of said lot in controversy in this action. Osmer Dixon died February 10, 1849, intestate, leaving him surviving a son, Phineas Dixon, his only heir, born September 18, 1844. Prior to the death of Osmer there has been no fence built around the church lot so as to separate the same from the residue of the Dixon land. In 1856 or 1857 the plaintiff caused the same to be surveyed in accordance with its claim of purchase and ownership as above stated, and built a substantial picket and board fence along the northeast side and in rear of the church, on the lines of such survey, so as to inclose its lot and separate the same from the rest of said Dixon land. Such fence so built by the plaintiff, inclosing said lot, was kept up and maintained by the plaintiff continuously thereafter for more than twenty years, and until some time in the year 1878. During all of that time the said lot was protected by the plaintiff by a substantial inclosure, and the plaintiff was in the actual, continued occupation of said premises under a claim of title as purchaser of same from said Osmer Dixon, as aforesaid. And the said plaintiff has been, ever since the said lot was surveyed and fences built, in the exclusive and actual occupation continuously of said church building, and in the possession of all of the residue of said lot for church purposes, until the plaintiff, in August, 1888, was excluded from that part of the lot by the defendant, to recover the possession of which this action was brought. After the death of Osmer Dixon and during the minority of his son, Phineas, that part of the Dixon land not embraced in the church lot was rented from time to time to different persons by one Richards, who had the charge and control of the same as the guardian of Phineas. Richards resided about 2½ miles from Battenville, and was frequently there. Phineas lived with him until he became of age, September 28, 1865, when he assumed the control of said premises, and had the possession thereof in person or by his tenants up to March 31st, when he conveyed the same to one Hyatt. Up to this time this plaintiff had in no way been disturbed in its possession, which was open, notorious, and exclusive, and its right thereto, and to the possession as owner of said lot, had not been questioned by anybody in any way.

"Did Phineas Dixon intend by the deed to Hyatt to convey such church lot, or any part of the same? What was the understanding at the time of both parties to the deed as to the land conveyed therein? Did that deed assume to convey the lot, or any part of it, thus occupied or known as the lot sold to the plaintiff? The description of the premises in the deed includes the church lot, and it was granted thereby, unless it is saved and excluded by the exception in the deed, which is in these words: 'Except a small lot sold off from the southwest corner of the above-described premises to the Methodist E. Church.'. To determine what premises were included in the exception, and so excluded from the grant, it is proper to construe that exception in view of the surrounding circumstances. Green v. Eldred, 66 N. Y. 611. All grants in consequence are supposed to be made with reference to an actual view of the premises by the parties thereto. Wendell v. People, 8 Wend. 183–190; Railroad Co. v. Stigeler, 61 N. Y. 348–350, per Lott, C. C. Facts existing and known to the parties at the time may properly be considered in aid of the interpretation of the language of the exception. Dent v. Steamship Co., 49 N. Y. 390; Clark v. Wethey, 19 Wend. 320; Cronk v. Wilson, 40 Hun, 269; Steam Co. v. Stern, 46 Hun, 206–209. Oral evidence is competent to ascertain the intention of the parties as expressed in the writing. Coleman v. Manhattan, etc., Co., 94 N. Y. 229, 232. The court is permitted to place itself in the position of the parties at the time when the deed was executed, and to

consider the attendant circumstances, in aid of its interpretation. Thus looking at the description in this deed and the exception therein, I have no doubt that it was the intention of the grantor, when he executed the deed, to convey only that portion of the land of which he was then in the actual occupation, and to except and exclude from the grant the lot of land of which the plaintiff was in the occupation, as hereinbefore stated, under claim of ownership, by sale from the father of the grantor. The land thus intended to be excepted was, in fact, a 'small lot' in the 'southwest' corner of premises described in the deed, and there is no pretense of a sale of such lot to any one but the plaintiff; and the words 'Methodist E. Church,' therein referred to, mean the plaintiff. It will be perceived that such 'small lot' is referred to in the exception in the deed as if it were a well-known lot,—a part or division of a larger parcel that was well known to the parties, both grantor and grantee. It may well be inferred that both parties to the deed, at the time it was drawn and executed, understood and believed that the 'small lot' then in the actual occupation of the plaintiff had been 'sold' by Phineas Dixon to the plaintiff, and belonged to it, and that it was the intention of both parties to except and exclude the same from the conveyance; and that they then both understood it was not included in the deed, but was expressly excluded by the description and exception in the deed. Courts are required, by the long-established rules with reference to the construction of descriptions contained in conveyances, to adopt such an interpretation thereof as shall give effect to the instrument according to the intention of the parties, if that is discoverable from legitimate sources of information. Per Ruger, C. J., in Brookman v. Kurzman, 94 N. Y. 276. I must therefore hold that no part of the premises described in the complaint passed by the conveyances from Dixon to Hyatt, but the same and the whole thereof was excepted and excluded therefrom.

"Hyatt, the grantee, after the execution of said deed, went at once into the possession and occupation of that portion of the premises described in the deed which was conveyed to him thereby, in accordance with such construction of the deed; and he continued to own and occupy that part of said premises from that time until about 11th March, 1881, when he conveyed the same to one E. J. Burroughs. Burroughs, on the 1st September, 1881, conveyed the same premises to Clementine Kenyon, and she, on the 3d December, 1881, deeded the same to the defendant in this action, in pursuance of a contract for the sale thereof to defendant, made by Burroughs while he owned the land, as appears by a recital in the deed from him to said Clementine Kenyon. The premises are described in each of said deeds in the same way. During the whole period of time that Hyatt owned and occupied the land conveyed by him to Burroughs—from March, 1868, to March, 1881—he always recognized and considered the lot occupied by the plaintiff as described in the complaint as rightfully belonging to the plaintiff, and never made any claim to the contrary. He was sworn as a witness on the trial, and so testified in substance. It does not appear that any claim to the premises described in the complaint, or any part thereof, was ever made by any one hostile to the claim or right of the plaintiff thereto, before the deed from said Kenyon to the defendant was executed, and the claim made therefor by the defendant under said deed. It follows that, under my construction of the deed from Dixon to Hyatt, the defendant did not obtain any right of title to the premises described in the complaint, or any part thereof, under the deed to her from Kenyon. Her subsequent acts of ownership and possession upon the premises in dispute, ending in building the fences thereon, so as to exclude the plaintiff wholly therefrom, and withholding the possession thereof from the plaintiff, were all unauthorized and unlawful.

"Upon the trial the defendant's counsel, upon the cross-examination of the plaintiff's witnesses Carswell and Parks, elicited that some time in 1882, when defendant was living upon the premises conveyed to her by Kenyon, in the old Dixon house, Phineas Dixon had executed a deed of the premises claimed by plaintiff to the plaintiff; that such deed had been procured by the trustees of the plaintiff and its minister, one Brown; that Brown, on their part, or for the plaintiff, went to the residence of Dixon, at Schuylerville, and there drew up the deed, and had it executed and put on record. And defendant's counsel further showed by the defendant, as a witness on her part, that in 1882 the trustees of plaintiff, and said minister and others with them, came to the premises with a surveyor, to survey the same, and build a fence, and that on that occasion Brown asked to see her deed, and she testified: 'I then asked him to let me see theirs. I showed my deed, and they showed theirs,—something they called a deed from Phineas Dixon,—and I told them it was no good.' Upon her cross-examination, plaintiff's counsel produced a deed from Phineas Dixon and wife to Walsh and others, trus-

tees, and dated 6th October, 1882, and recorded in Washington county the 14th October, 1882. and offered the same in evidence, stating that it was offered to show description of the premises, and not for purpose of showing title; and the same was received and marked in evidence without objection. The defendant was then further cross-examined in regard thereto, and testified that this was the same deed that was produced and exhibited to her by Mr. Brown, the minister, as stated by her on her direct examination. Defendant's counsel further showed, on recross-examining the witness Carswell on the subject of said deed, that the subject of getting the deed from Dixon was spoken of by the trustees and others of the plaintiff's church, and they arranged for and obtained the deed of Dixon, and had same recorded. The plaintiff had no documentary or paper evidence of title, except such as is contained in the deed from Dixon to Hyatt, and the same deeds, alluded to, under which the defendant claims. This deed was doubtless procured to further assure and perfect the plaintiff's title to the property as the trustees or minister conceived. It is insisted by defendant's counsel that this deed is void under the statute. 3 Rev. St. (7th Ed.) p. 2196, § 147. I do not think it is void, inasmuch as at the time of the delivery thereof the lands described in it were not in the actual possession of a person claiming under a title adverse to that of the grantor. The deed was procured to be executed for the plaintiff by its ministers, trustees, and adherents. The persons named and described in the introductory part of the deed as.ministers of the 'Methodist Episcopal Church' were at the time trustees of the plaintiff, and the words 'Methodist E. Church' were used as descriptive of the plaintiff, the intended grantee. Any attempt to assert title by the persons named therein as trustees, individually, or by any one claiming under them in hostility to plaintiff, could not succeed. Pitcher v. Hennessey, 48 N. Y. 423. The words 'Methodist Episcopal Church' in the deed could be explained by extrinsic and parol evidence, and shown to have been used to designate the plaintiff; and in equity the intention of the parties would be carried out, although uncertainly or ambiguously expressed; and thus any claim of title to the premises under that deed, antagonistic to plaintiff, could be met and overcome. Lee v. M. E. Church, 52 Barb. 116, and citations on pages 123, 124. The plaintiff in this action must prove upon the strength of its own title, and therefore it could not prevail if the evidence in the case showed that at the time when this action was commenced there existed an outstanding title to the premises paramount to that of the plaintiff, although the evidence did not show the defendant in any way connected with such title. But such outstanding title must appear to be a present, subsisting, and operative title, on which the owner could recover if asserting it by action, (3 Wait, Act. & Def. p. 109, § 4;) a subsisting and available title in a stranger, on which the owner might recover in ejectment, (Hoag v. Hoag, 35 N. Y. 469-473.) The right of entry or action by Phineas Dixon, though not barred by plaintiff's adverse possession, 6th of October, 1882, did not survive to him, or any one else in hostility to plaintiff, on the execution of the deed by him to Walsh and others of that date. It was then and thereby terminated.

"In my opinion, the evidence in the case establishes title in the plaintiff, at the time of the commencement of this action, by adverse possession, to the premises described in the complaint, and the whole thereof, and the right to recover of the defendant the possession of the portion of the premises withheld by her, as alleged in the complaint. Such title is equally strong as though obtained by grant. Sherman v. Kane, 86 N. Y. 57, 64, 65. And such title is not impaired because, after such title had fully matured, the most of the fence which the plaintiff had built inclosing the lot in '56 or '57 gradually decayed and fell down, and was removed, and not rebuilt. Even if the plaintiff had, since the maturing of its title, made no use whatever of the land, and had permitted it to remain unfenced and vacant, its title would have been good nevertheless. It would, in such case, be deemed by its title as in fact in the constructive possession of the lands, exercising a right over it by permitting the same to remain vacant, and in this form its possession would continue the same as if, by its agents or tenants, it was in the actual occupation of the premises. Opinion of the court, per Miller, J., Sherman v. Kane, supra, 65; Mayor, etc., v. Carleton, 113 N. Y. 285, 292, 21 N. E. Rep. 55. The plaintiff should have judgment accordingly."

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

Smith & Parmenter, (R. A. Parmenter, of counsel,) for appellant.
Gibson & Van Kirk, (C. C. Van Kirk, of counsel,) for respondent.

HERRICK, J.    I can see no reason for writing an opinion in this case.    The referee has discussed the questions involved at some length, and I concur with him in the result he arrived at, and, in the main, with his reasoning.

Judgment should be affirmed, with costs.    All concur.